NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0015n.06

No. 09-5955

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

FILED
Jan 07, 2011
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

DARYL KIMBERLY,

     Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF KENTUCKY

**BEFORE:  COLE and WHITE, Circuit Judges; O'MEARA, District Judge.**[*]

     **HELENE N. WHITE, Circuit Judge.**  Defendant Daryl Kimberly appeals from his guilty-plea conviction of knowingly traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with a minor, 18 U.S.C. § 2423(b), challenging the district court's denial of his motion to withdraw guilty plea and imposition of a two-level enhancement for obstruction of justice for attempted subornation of perjury, U.S.S.G. § 3C1.1.  We affirm the denial of the motion to withdraw guilty plea, but vacate the sentence and remand for re-sentencing.

### I.

     On February 9, 2005, Kimberly was indicted for knowingly traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with a minor, 18 U.S.C. § 2423(b);  using a facility or means of interstate commerce to coerce and entice a minor to engage in sexual activity,

---

[*]The Honorable John Corbett O'Meara, United States District Court for the Eastern District of Michigan, sitting by designation.

18 U.S.C. § 2422(b); and using an interstate wire communication to transfer obscene matter to a minor, 18 U.S.C. § 1470.

On May 31, 2005, pursuant to a plea agreement, Kimberly pleaded guilty of traveling in interstate commerce for the purpose of engaging in illicit sexual conduct. At the September 26, 2005 sentencing, Kimberly stated that he wished to withdraw his guilty plea, and later so moved. The district court denied Kimberly's motion and sentenced him to 180 months' imprisonment, above the Guidelines range of 78 to 97 months, and lifetime supervised release.

On Kimberly's appeal of his conviction and sentence, the Government conceded error in that it and the court had incorrectly advised Kimberly of the elements of the offense. This court vacated Kimberly's conviction and remanded for a trial or new plea. *United States v. Kimberly*, No. 06-5035 (6th Cir. August 5, 2008). Following this court's remand, Kimberly moved for re-arraignment/to plead guilty on January 9, 2009, but withdrew the motion on January 26, 2009. The case was set for jury trial on March 10, 2009.

After Kimberly again moved for re-arraignment, the parties executed a plea agreement on February 20, 2009, which the court approved on August 6, 2009. The plea agreement provided in pertinent part:

> 3. As to Count One, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

> (a) During November 2003, the victim, a female minor of less than 16 years of age, was in an internet chat room. While in the chat room, the Defendant electronically contacted the minor female victim and asked her age. The minor female victim advised the Defendant that she was fifteen. The Defendant added the minor female victim to his contact list.

(b) Over the next several months, the Defendant continued to have contact with the victim via both the internet and telephone. Ultimately, the Defendant began asking the minor female victim if she had any sexual experience. In approximately April of 2004, the defendant told the minor female victim that he would like to show her what it was like to have sex. Finally, in June of 2004, the Defendant advised the female minor victim that he had taken two days off from work and would be traveling from Virginia to Kentucky. The Defendant had described to the minor female victim several sexual acts that he would like to perform with her when he arrived in Kentucky.

(c) On June 9, 2004, the Defendant traveled in interstate commerce from his home in Virginia to the home of the minor female victim in Falmouth, Kentucky. Upon his arrival, the Defendant engaged in several sexual acts with the minor female victim, including oral/genital contact. The Defendant admits that, at the time he traveled from Virginia to Kentucky, it was his intent to engage in sexual activity with the minor victim, whom he knew was 15 years of age. The Defendant also admits that, on [] June 9, 2004, he was 51 years of age. On June 21, 2004, after returning to Virginia, the Defendant sent the minor female victim an e-mail regarding the visit and the sexual acts he had performed on her during the visit.

. . . .

8. No agreement exists between the Defendant and the United States regarding which, if any, enhancements should be applied to the Defendant's base offense level pursuant to the Sentencing Guidelines. The Defendant understands that the ultimate decision on which, if any, enhancements are supported by the evidence is to be decided by the Court.

R.E. 133. At the February 20, 2009 plea hearing, Kimberly admitted that he traveled from Virginia to Kentucky on June 9, 2004, with the intent of engaging in sexual activity with a minor female.

Approximately one month after entering the guilty plea, Kimberly moved to withdraw his plea, asserting that he "immediately changed his mind regarding the Plea" on discovering that he had alibi witnesses "who will be able to testify as to his whereabouts on the date of the alleged occurrence, which was <u>not</u> in Kentucky," and that he had located a document "that will support his alibi and prove it to be impossible that his vehicle could have [been] or was in Kentucky on the date or about the time of the alleged offense." R.E. 123 at 4.

As discussed *infra*, the district court denied Kimberly's motion to withdraw plea, concluding that only one of the factors set forth in *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *superseded on other grounds by statute as recognized in United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir. 2000), the timeliness of the motion, favored granting the motion.  Regarding Kimberly's newly discovered evidence and alibi witnesses, the district court noted:

> Counsel advised that Defendant's wife had found a receipt from a mechanic's garage bearing a date of June 7-11, 2004.  According to Defendant, that receipt proves that the vehicle which he allegedly drove to Kentucky was being repaired on the date of his alleged travel from Virginia.  As a result, he could not have traveled to Kentucky on the date alleged in the Indictment because his vehicle was in the mechanic's garage.  Defendant also identified a new alibi witness, his sister-in-law, who will now testify he was in Virginia on the date he was supposedly in Kentucky committing sexual acts with the minor female victim.
>
> Although Defendant has characterized the mechanic's receipt and alibi witness . . . as "new," given the amount of time which has transpired since the case was originally indicted in 2005, the Court cannot conclude that that evidence is new. To the contrary, Defendant has had more than four years to discover and put forth evidence to challenge the charges in the Indictment.  As aptly pointed out by the prosecutor, although the receipt was allegedly recently found by Defendant's wife, there is nothing in the record to establish that the receipt has been authenticated by the mechanic who allegedly performed the work on Defendant's vehicle.  Moreover, even if the receipt does in fact exist, its existence flies directly in the face of Defendant's unequivocal admissions to the undersigned during the plea colloquy that he traveled to Kentucky to have sex with a minor female.
>
> More significantly, Defendant has failed to present any good or valid reason why the alleged new evidence could not have been discovered prior to February, 2009.  According to Defendant, the mechanic's receipt was allegedly found by Defendant's wife.  If this receipt was so critical to the defense of the case, one would think its existence could have and should have been known far earlier than one month after the guilty plea was entered, and more than four years after the case had been indicted.  In the court's view, the fact that it was only <u>after</u> entering a guilty plea for the <u>second time</u> that Defendant's wife allegedly discovered this evidence makes his reasons for discovering its existence earlier highly suspect.

The same can be said for the "new" alibi witness, who coincidentally is Defendant's sister-in-law. Given her familial relationship to Defendant's wife, it is reasonable to conclude that she was aware that Defendant had been indicted in 2005. It is even more reasonable to conclude that she would have known Defendant was in Virginia and not Kentucky in June 2004 well before Defendant entered his second guilty plea on February 20, 2009. Defendant's labeling of her as a "new" alibi witness is simply not credible.

Most significantly, the alleged "new" alibi and documentary evidence is directly contrary to Defendant's own detailed admissions to the Court during the plea colloquy. Although Defendant says he now has alibi witnesses (only one of whom is new, his sister-in-law) who would testify he was not in Kentucky in June, 2004, he admitted to the undersigned, under oath, that he traveled to Falmouth, Kentucky on June 9, 2004 for the purpose of engaging in sexual acts with the minor female victim. He further admitted that upon his arrival in Kentucky, he engaged in sexual acts with the minor female victim. If Defendant had witnesses to support an alibi defense, he could have certainly notified the Court of that fact prior to entering his guilty plea. Even without an alleged receipt from a mechanic's garage, Defendant and his wife could have testified that Defendant's vehicle was being repaired during the dates he allegedly was in Kentucky. Additionally, even without an alibi from his sister-in-law, Defendant and his wife could have testified he was in Virginia when he was suspected of being in Kentucky having sex with a minor female.

Under these facts, the Court concludes that this factor weighs heavily against granting the motion to withdraw.

R.E. 129 at 5-7.

## II.

The PSR computed a base offense level of 24, and added three two-level enhancements -- for obstruction of justice, unduly influencing the victim to engage in prohibited sexual conduct, and use of a computer or internet access device to persuade, induce, entice, or coerce the victim to engage in prohibited sexual conduct – for an adjusted offense level of 30. A two-level reduction for acceptance of responsibility brought the total offense level to 28 which, with a criminal history category of I, resulted in a Guidelines range of 78 to 97 months.

The PSR's recommended two-level enhancement for obstruction of justice, § 3C1.1, was based on the forensic examiner's evaluation of a disk defense counsel provided that contained transcripts of internet communications between Kimberly and the minor victim. The PSR stated that the forensic examiner found two files highly suspect and believed them to be fraudulent, and that "it would appear that the defendant altered the dates of the two e-mails in question . . . to try and prove that he thought the minor victim . . . was . . . older than the age of 16."

Kimberly objected to the application of the two-level obstruction-of-justice enhancement, denying that he intentionally altered any emails or instant messages. Kimberly stated that his computer had insufficient memory to store documents and, in an effort to provide defense counsel with chats from his computer, he copied messages and pasted them in a Word document. He stated that his computer's CMOS battery was dying or defective, such that each time the computer shut down and was turned back on it would default to the manufacturer's pre-set default date. When turned back on, the computer prompted him to insert a date.

The district court declined to apply the obstruction-of-justice enhancement based on the suspect chats and forensic evidence, but applied it for attempted subornation of perjury. The court sentenced Kimberly to 90 months' imprisonment, within the 78- to 97-month Guidelines range, and lifetime supervised release. This court granted Kimberly's motion to expedite oral argument.

## III.

Kimberly argues that the district court clearly erred in imposing, *sua sponte*, the obstruction-of-justice enhancement, § 3C1.1, for attempted subornation of perjury for two reasons: first, the court failed to make requisite factual findings regarding the specific testimony believed to be

perjurious and, second, the record indicates no attempted subornation of perjury could have taken place as a matter of law.

**A**

Generally, this court reviews a sentencing court's factual determinations for clear error, and its interpretation of the sentencing guidelines *de novo*. *United States v. Paull*, 551 F.3d 516, 526 (6th Cir. 2009). However, review of the application of U.S.S.G. § 3C1.1 to the facts is for clear error. *United States v. Jackson-Randolph*, 282 F.3d 369, 389-90 (6th Cir. 2001), *reh'g and suggestion for reh'g en banc denied* (2002) (noting that under *Buford v. United States*, 532 U.S. 59 (2001), "the clear error standard is . . . appropriate for reviewing sentencing decisions under § 3C1.1 where the sole issue before the district court is a fact-bound application of the guideline provisions."). A district court's determination whether facts constitute obstruction of justice is a mixed question of law and fact that this court reviews *de novo*. *United States v. Vasquez*, 560 F.3d 461, 473 (6th Cir. 2009).

Section 3C1.1 of the 2003 Guidelines Manual provides:

> If (A) the defendant *willfully* obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense by 2 levels.

This enhancement applies where a defendant commits, suborns or attempts to suborn perjury. *See* § 3C1.1 cmt. n.4(f). Commentary to § 3C1.1 includes:

> 2. This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury) . . . is not a basis for application of this provision. In

applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.

U.S.S.G. § 3C1.1 cmt. n. 2.

6. "Material" . . . information, as used in this section, means . . . information that, if believed, would tend to influence or affect the issue under determination.

. . . .

9. Under this section, the defendant is accountable for his own conduct and for conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused.

U.S.S.G. § 3C1.1 cmts. nn.6 & 9.

The offense of attempted subornation of perjury links the intent to procure false testimony with the act of soliciting an agreement to testify, falsely, although such testimony is ultimately not given. Hence, the offense of attempted subornation of perjury is made out whenever an accused instigates and procures the agreement of a prospective witness to testify falsely; it is a necessary element of the crime that both the accused and the person to be suborned know that the testimony sought to be elicited is false and material.

60A Am. Jur. 2d, Perjury, Attempt to Suborn § 109. Conviction of an attempt crime requires the government to prove both criminal intent and that the defendant committed an overt act that constitutes a substantial step toward commission of the crime. *United States v. Wesley*, 417 F.3d 612, 618 (6th Cir. 2005).

**B**

As a preliminary matter, we note that the Government did not seek, and the Probation Office did not recommend, imposition of a § 3C1.1 enhancement on any ground other than the emails/chats.

Kimberly thus accurately asserts that he had no notice that the obstruction-of-justice enhancement

would be applied for attempted subornation of perjury. However, while notice is required before a

sentencing court departs from a sentencing range, notice is not required when, as in the instant case,

the district court applies the Guidelines in a manner different than the PSR recommends. *United*

*States v. Hayes*, 171 F.3d 389, 392-93 (6th Cir. 1999); *see also United States v. Hudson*, 491 F.3d

590, 596 (6th Cir. 2007).

Kimberly asserts that the district court clearly erred in failing to make the requisite specific

findings for a perjury-related enhancement, and thus failed to comply with *United States v.*

*Sassanelli*, 118 F.3d 495, 501 (6th Cir. 1997). We agree.

This court noted in *Sassanelli*:

> In *United States v. Dunnigan,* 507 U.S. 87 [] (1993) [*abrogated on other grounds by
> United States v. Wells*, 519 U.S. 482 (1997)], the Supreme Court upheld the
> constitutionality of the [§ 3C1.1] guideline. However, a sentencing enhancement for
> perjury under § 3C1.1 must be limited to those cases in which the defendant
> intentionally lied on the stand. Because the guideline was "not intended to punish
> a defendant for the exercise of a constitutional right," U.S.S.G. § 3C1.1, comment.
> (n.1), an enhancement is not warranted if the defendant merely testified untruthfully
> due to mistake or confusion. *Dunnigan,* 507 U.S. at 94 []. Accordingly, the district
> court may not rely solely on the jury's verdict, but must instead make an independent
> finding that the defendant committed perjury. *See Mathews v. United States*, 11 F.3d
> 583, 587 (6th Cir.1993).
>
> In order to minimize the danger that application of the guideline would
> discourage defendants from testifying truthfully at trial, the Supreme Court has
> mandated that a district court must make a specific finding that the defendant
> committed perjury before imposing the enhancement.
>
>> [I]f a defendant objects to a sentence enhancement resulting from her
>> trial testimony, a district court must review the evidence and make
>> independent findings necessary to establish a willful impediment to
>> or obstruction of justice, or an attempt to do the same, under the

perjury definition we have set out. When doing so, it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding. The district court's determination that enhancement is required is sufficient, however, if, as was the case here, the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury.

*Dunnigan,* 507 U.S. at 95 [] (citations omitted).

Our court has since added its own gloss to *Dunnigan.* In order to fulfill the Supreme Court's direction that an independent finding of perjury is required, and in order to provide the appellate court with a meaningful record to determine that such an independent finding has been made, we have held that in the usual case the sentencing court must identify particular examples of the defendant's untruthful testimony upon which it bases the § 3C1.1 enhancement.

To comply with the Supreme Court's directive in *Dunnigan,* the sentencing judge must identify for the record at least some specific instances of conflicting testimony and specify which portions of the defendant's testimony he finds materially perjurious. The judge must, at least briefly, explain why the intentional perjury was material.

*United States v. Spears*, 49 F.3d 1136, 1143 (6th Cir.1995) (citations omitted).

Under the precedents of the Supreme Court and of this court, then, the district court must fulfill two requirements; first, it must identify those particular portions of the defendant's testimony that it considers to be perjurious, and second, it must "either make specific findings for each element of perjury or at least make a finding 'that encompasses all of the factual predicates for a finding of perjury.'" *United States v. Comer,* 93 F.3d 1271, 1282 (6th Cir.) (quoting *Dunnigan,* 507 U.S. at 94 []. While the latter rule has been held by the Supreme Court to be required under § 3C1.1, the former rule is one of our own creation to assist our review of sentencing enhancements under that guideline. *See United States v. Clark*, 982 F.2d 965, 969 (6th Cir. 1993) (declining to reverse on ground of inadequate findings, but directing that "the better practice, and the requirement that should be followed hereafter" is to identify specific perjurious statements).

118 F.3d at 500-01.

**C**

In addressing Kimberly's objection to the obstruction-of-justice enhancement at sentencing, the district court first confirmed that Kimberly had instructed defense counsel to file the motion to withdraw plea. Following the forensic examiner's testimony regarding the suspect chats/emails, the district court stated:

> All right. Well, I'm going to be candid with the parties. Certainly . . . I think there's an argument to be made that there have been some alterations [of the disc]. . . .
>
> . . .
>
> [] I have some questions that simply just have not been answered with the testimony and the evidence that's been provided to the Court . . . .
>
> However, the defendant's attempt in his motion to withdraw the guilty plea to have alibi witnesses to come in and say that he wasn't here on June 9, 2004, and that the vehicle that he may have been driving to arrive here in 2004 was in the shop based upon some receipt, I think that's obstruction for purposes of the guideline.
>
> . . . while I think I could craft findings by a preponderance of the evidence based upon the testimony of [forensic examiner] Detective Frazier. . . I don't think it's necessary, because I think the conduct by the defendant – and I'm certainly not criticizing Mr. Fessler [*defense counsel*] because he's filed a motion on behalf of his client at the behest of his client.
>
> The Court believes that the defendant attempted to suborn perjury in his motion to withdraw guilty plea. As I previously documented in the memorandum opinion and order denying the motion to withdraw the guilty plea, the defendant admitted during his plea colloquy with the Court that he traveled from Virginia to Kentucky on June 9, 2004, for the purpose of having sex with a minor female. He admitted to engaging in sexual acts with her once he arrived in Kentucky, and that's at page 42 and 43 of the plea colloquy.
>
> In his motion to withdraw the plea, he identifies alibi witnesses and the fact that he had new evidence that proves he could not have been in Kentucky on June 9, 2004. Of course, his admissions in the written plea agreement and before the Court during the plea colloquy are directly opposite of what his alibi witnesses would have purportedly said.

11

> The defendant attempted to suborn perjury in support of his motion to withdraw his guilty plea by pointing to witnesses who would testify contrary to what he told me during the plea.
>
> His subornation of perjury in his motion to withdraw guilty plea supports a two-level enhancement for obstruction justice pursuant to 3C1.1.
>
> In making this decision, the Court did find one other case, not Sixth Circuit, but where an appellate court upheld the obstruction of justice enhancement by a defendant who perjured himself in support of a motion to withdraw a guilty plea. And that's U.S. v. Carroll, 412 F.3d 787 at page 793 and 794 [(7th Cir.)] 2005.

R.E. 146 at 55-57.

## D

Kimberly is correct that the district court failed to identify specific testimony, actual or solicited, that was or would have been perjurious if given. At argument, the Government asserted that the district court did, in effect, find perjury. Even if that were the case, the district court's findings did not address that there was no evidence of any communications between Kimberly and the alibi witnesses, much less of any attempt on his part to procure or instigate false testimony. Nor was there any sworn testimony or affidavit given by either Kimberly or the proposed witnesses in connection with Kimberly's motion to withdraw guilty plea. There was no evidence that Kimberly attempted to influence, or procured an agreement from either of the witnesses to testify falsely, or to testify at all. The documentary evidence raised in Kimberly's motion to withdraw plea – a garage receipt indicating that Kimberly's car was being worked on by a Virginia garage between June 7 and 11, 2004 – was not before the court, and defense counsel stated that he had not seen the receipt – that Kimberly's wife had it. *Cf. United States v. Bingham*, 81 F.3d 617, 632 (6th Cir. 1996) (concluding

that district court did not clearly err in imposing § 3C1.1 obstruction-of-justice enhancement for attempted subornation of perjury where defendant wrote letters to his co-defendant/girlfriend attempting to influence her decision to enter guilty plea, co-defendant/girlfriend testified at trial that defendant told her if she did not testify that a particular gun was hers, he would get into a lot of trouble and he did not want to go back to prison, and the issues about which defendant instructed her to testify falsely were critical to finding that defendant was involved in conspiracy, the charge that resulted in his life imprisonment).

The case the district court relied on, *United States v. Carroll*, 412 F.3d 787 (7th Cir. 2005), is distinguishable. The district court in *Carroll* made particularized findings that Carroll was lying based on his testimony at a hearing on his motion to withdraw his guilty plea, which included that he lied at the plea colloquy and falsely admitted guilt, and his testimony at the plea colloquy. 412 F.3d at 791, 793-94. The Seventh Circuit concluded that the district court's determination that Carroll perjured himself in support of the motion to withdraw his plea was not clear error, upholding imposition of the § 3C1.1 enhancement. *Id.* at 794.[1] In the instant case, no evidentiary

[1]The Government argues that actual testimony of a witness is not required, citing *United States v. Thomas*, 223 F. App'x 447, 451-52 (6th Cir. 2007) (unpublished), and that the prosecution need establish only that the defendant knew or believed that testimony of a witness about to be given *will be false*, citing *Riley v. United States*, 647 A.2d 1165 (D.C. App. 1994). Pl.'s Br. at 10 n.1, 10-11. Neither case supports upholding the district court's determination that Kimberly attempted to suborn perjury.

In *Thomas*, an FBI agent testified at the sentencing hearing that he investigated Thomas's alibis and advised Thomas that Ms. Broom, whom Thomas claimed to be with at the time of the robbery in question, had been interviewed and denied being with him. The agent testified that Thomas responded by saying something to the effect of, "I'll get that bitch." The agent further testified at sentencing that he had listened to a tape recording of a phone call Thomas placed from

hearing was held on Kimberly's motion to withdraw plea, nor was he placed under oath at the motion

hearing.

Under *Sassanelli*, the district court was required to make independent findings necessary to

establish that Kimberly attempted to suborn perjury. The district court identified no overt act of

Kimberly's that constituted a substantial step toward suborning perjury. Further, the Government

cites no authority to support, nor has our research yielded any, that Kimberly's instructing defense

---

the jail to Broom during which Thomas told Broom to advise the FBI that she was with him on the day in question if the FBI questioned her. Broom responded that she was not with Thomas that day. The district court applied the § 3C1.1 two-level enhancement, concluding that Thomas had obstructed justice. This court concluded that the district court did not clearly err in finding that Thomas obstructed justice because there was reliable evidence that he unlawfully attempted to influence Broom. 223 F. App'x at 453.

*Thomas* is clearly distinguishable. Although Broom, whom Thomas had tried to influence to lie, did not testify, the FBI agent testified at sentencing that he heard a taped recording of Thomas soliciting Broom to lie for him. In the instant case, there was no testimony whatever regarding contact between Kimberly and the purported recently-discovered alibi witness, his sister-in-law. Nor was there testimony regarding the substance of Kimberly's contact with his wife regarding the alleged mechanic's receipt indicating repairs being made on a vehicle from June 7 to 11, 2004.

*Riley v. United States*, 647 A.2d 1165 (D.C. App. 1994), a state (District of Columbia) case, is also inapposite. A majority of the court there held that one of the defendants, Allen, could not be convicted of attempted subornation of perjury based on the fact that he told a witness "don't tell them nothing," where there was no evidence that Allen knew the witness was going to give false testimony, that he knew anything about her prospective testimony, or that he attempted to influence her to testify in a certain way. 647 A.2d at 1173-74. The *Riley* court did conclude that Allen could be convicted of obstruction of justice under the District of Columbia Code, based on his telling the witness "Don't tell them nothing," because Allen thereby corruptly influenced her to carry out her duties as a witness improperly. 647 A.2d at 1173.

Again, in contrast to the cases the Government relies on, in the instant case, there was no evidence that Kimberly instigated or solicited an agreement from his sister-in-law or his wife to give false testimony or engage in obstructive conduct.

14

counsel to file the motion to withdraw guilty plea constituted such a substantial step under the circumstance that the record is devoid of any evidence of communication between Kimberly and the proposed alibi witnesses. In sum, the district court did not make specific findings for each element of attempted subornation of perjury, nor did it make a finding that encompassed all the factual predicates. Under these circumstances, the district court clearly erred in imposing the two-level § 3C1.1 obstruction-of-justice enhancement for attempted subornation of perjury. *Sassanelli*, 118 F.3d at 501.

## IV.

The Government alternatively argues that this court should uphold the § 3C1.1 obstruction -of-justice enhancement on the alternative ground that Kimberly provided materially false information to the district court, *see* § 3C1.1 cmt. n.4(b), by admitting in his plea agreement and during allocution to the date, location, and facts of the offense, and then stating in his motion to withdraw his plea that he had witnesses to prove that he had an alibi for the offense. The Government did not advance this argument below, the PSR did not recommend enhancement on this basis, and we decline the Government's invitation to apply the enhancement in the first instance.[2]

Moreover, Kimberly asserts that the district court "appears to have misconstrued the nature of the proposed testimony" as that he never engaged in the alleged sexual conduct when, in fact, the

---

[2]The only case the Government's brief cites, *United States v. Allen*, 106 F.3d 695, 700 n.4 (6th Cir. 1997), neither addressed nor sanctioned affirmance of the imposition of a *sentence* enhancement on any ground supported by the record. In *Allen*, the affirmance was of the denial of a motion to suppress. The case *Allen* cites in support, *City Mgt. Corp v. U.S. Chem. Co.*, 43 F.3d 244, 251 (6th Cir. 1994), involved affirmance of summary judgment.

basis of his motion to withdraw plea was that the proposed alibi witnesses and documentary evidence would establish only that he could not have been in Kentucky committing the sexual acts *on June 9, 2004* – the precise date the Government alleged. Kimberly asserts that where the acts forming the basis of his guilty plea would have been completely legal had they taken place two weeks after the June 9th date the Government asserted, establishing an alibi for June 9, 2004 could well have demonstrated his actual innocence of the offense.

For the reasons stated, we decline the Government's invitation to affirm imposition of the obstruction-of-justice enhancement on a ground different than the district court (and on a ground the Government did not advance below).

## V.

Kimberly's final challenge is to the denial of his motion to withdraw guilty plea. This court reviews the denial of such a motion for abuse of discretion. *United States v. Lineback*, 330 F.3d 441, 443 (6th Cir. 2003). A defendant may withdraw a guilty plea after the court accepts the plea but before sentencing if the defendant can show a fair and just reason for requesting the withdrawal. Fed. R. Crim. P. 11(d)(2)(B). *Bashara* set forth seven non-exclusive factors for a court to consider in determining whether the defendant has met his burden: 1) the amount of time that elapsed between the plea and the motion to withdraw, 2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings, 3) whether the defendant has asserted or maintained his innocence, 4) the circumstances underlying the entry of the guilty plea, 5) the defendant's nature and background, 6) the degree to which the defendant has had prior experience

with the criminal justice system, and 7) potential prejudice to the government if the motion to withdraw is granted. 27 F.3d at 1181.

Kimberly asserts regarding the second *Bashara* factor that actual innocence is a valid ground for withdrawing a guilty plea and that a claim of innocence accompanied by credible evidence is typically sufficient, citing *Carroll*, 412 F.3d 782. He contends that his "documentary and alibi witnesses would establish his innocence by creating reasonable doubt on the critical element of the timing of his trip to Kentucky." Def.'s Br. at 23-24. We disagree. The emails and chats before the district court tended to support that Kimberly was in Kentucky on June 9, 2004. There was no evidence before the court to support that Kimberly was not in Kentucky on that date–the mechanic's garage receipt purportedly indicating that Kimberly's vehicle was being worked on between June 7 and 11, 2004, was not submitted to the court. In fact, defense counsel stated that he had not seen it and that Kimberly's wife had it. Similarly, there were no affidavits or sworn testimony from Kimberly's purported alibi witnesses before the court.

Regarding *Bashara* factors three through seven, which the district court concluded weighed against granting the motion to withdraw plea, Kimberly cites no authority and his arguments fall far from supporting that the district court abused its discretion by relying on clearly erroneous findings of fact or improperly applying the law. *See Lineback*, 330 F.3d at 443.

## VI.

For the reasons stated, we AFFIRM the denial of Kimberly's motion to withdraw guilty plea, VACATE the imposition of the two-level § 3C1.1 obstruction-of-justice enhancement for attempted subornation of perjury, and REMAND for resentencing.